### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **ROGER W. WATTS, JR.,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **4:15-cv-02250-KOB** |
| | ] | |
| **WELLS FARGO DEALER SERVICES, INC.,** | ] | |
| | ] | |
| **Defendant.** | ] | |

### MEMORANDUM OPINION

This case concerns Roger W. Watts, Jr.'s attempts to retain possession of a BMW car for which he has not paid. This matter is before the court on Defendant/Counter-claimant Wells Fargo's Motion for Summary Judgment. (Doc. 60). Wells Fargo moves for summary judgment on both Mr. Watts's claims and its counterclaim for breach of contract. Mr. Watts did not respond to the motion; therefore Wells Fargo's facts are undisputed pursuant to the court's requirements for summary judgment briefs in Appendix II, referenced in the court's Scheduling Order. (Doc. 22 at 5).

### I.      Standard of Review

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). When a district court reviews a motion for summary judgment it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *Id.*

The moving party "always bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The court cannot grant a motion for summary judgment merely because the nonmoving party fails to respond; it "must consider the merits of the motion" and "ensure that the motion itself is supported by evidentiary materials." *United States v. One Piece of Real Prop.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

In reviewing the evidence submitted, the court must view all evidence and factual inferences drawn from it in the light most favorable to the non-moving party. *See Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (citation omitted). However, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citation omitted).

## II. Factual and Procedural History

This case centers on Mr. Watts's purchase of a 2011 BMW, VIN WBAKC8C56BC434525, from CarMax on credit in May 2014. Wells Fargo, a preferred lender for CarMax, loaned Mr. Watts $50,363.40 at 9.9% interest to finance the purchase from CarMax. Mr. Watts signed the Retail Installment Contract with CarMax; the agreement specifically provided that the contract and Mr. Watts's obligations to make payments under it were assigned to Wells Fargo. Under the contract, Wells Fargo retained a security interest in the car. The

contract provided that Mr. Watts would make monthly payments and that, if he defaulted on those payments, Wells Fargo had the right to repossess the vehicle. The contract also provided for an award of reasonable attorneys' fees and court costs, not to exceed 15% of the amount Mr. Watts owed at the time of default and referral, incurred in collection or enforcement. Mr. Watts made payments on that loan through June of 2015, with those payments totaling $11,239.15 of the $70,438.80 he was scheduled to pay under the contract. In October 2015, Wells Fargo apparently unsuccessfully attempted to repossess the vehicle.

Mr. Watts brought this lawsuit in November 2015 in state court. Wells Fargo removed it to federal court in December 2015, and Mr. Watts amended his complaint in May 2016. Mr. Watts's "Amended Verified Fair Debt Collection Practicing Act Complaint; Petition for Declaratory Relief and for Compensatory and Punitive Damages" apparently asserts two claims: one alleging that Defendant Wells Fargo violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, by failing to validate the debt it claims Mr. Watts owes under the Retail Installment Contract, and another stating that, under the contract, Mr. Watts is the rightful owner of the vehicle and Wells Fargo is indebted to him.[1] Wells Fargo filed a

---

[1] Mr. Watts's Amended Complaint does not clearly articulate causes of action; Wells Fargo and the court have done their best to distill Mr. Watts's theories of relief from the Complaint. Among other things, it refers to fraud and collusion on the part of Wells Fargo and CarMax, and alleges that those two parties are in administrative default. Mr. Watts did not name CarMax as a Defendant. Further, to the extent his Complaint raises distinct claims based on the argument that, under the contract, Mr. Watts is the true owner of the car and lent money to Wells Fargo without receiving consideration in return, the court finds that they are all due to be rejected because of the frivolity of that underlying theory of credit. Alternatively, the court finds that in failing to respond to the Motion for Summary Judgment and explain how his Complaint contains such distinct claims for relief, Mr. Watts has failed to meet his burden under Rule 56 to demonstrate a genuine issue of material fact as to those claims. *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations omitted) ("In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.' There

Counter-complaint alleging that Mr. Watts breached the Retail Installment Contract and seeking

a preliminary injunction to obtain possession of the collateral as well as attorneys' fees under the

contract.[2]

Because all evidence supported a breach of the contractual obligation to pay on the loan

for more than a year, this court granted Wells Fargo's request for a preliminary injunction and

ordered Mr. Watts to turn over possession of the car to Wells Fargo by noon on October 28,

2016. Mr. Watts failed to turn over the car and, after a series of evasive measures on Mr. Watts's

part, including the filing of a bankruptcy case that was dismissed, reinstated, and dismissed

again, the court found him in civil contempt of the court's Order on March 23, 2017. The court

ordered that Mr. Watts remain in the custody of the U.S. Marshals until he surrendered

possession of the vehicle to the Marshals. He remains in custody as of this date despite the

court's repeated admonitions to him, including as recently as May 15, 2017, that he holds the

is no burden upon the district court to distill every potential argument that could be made based
upon the materials before it on summary judgment. Rather, the onus is upon the parties to
formulate arguments; grounds alleged in the complaint but not relied upon on summary judgment
are deemed abandoned.").

[2] Mr. Watts filed a document styled on the docket as "Notice of submission of
Counterclaim with Affidavit of Truth." (Doc. 76). The document consists of references to a trust
(and an apparent attempt to join the trust as a party or have the trust intervene) a number of
excerpts from legal authorities, and sundry legal documents. To the extent Mr. Watts intended
this document to constitute a Counterclaim, he may not bring a counterclaim in a lawsuit in
which he is the Plaintiff. To the extent he intended this document to constitute an amended
complaint or supplement to his Amended Complaint, he is prohibited from doing so by the
court's Scheduling Order, which set a July 1, 2016 date for amending pleadings and joining
additional parties. (Doc. 76 at 2). To the extent he intended this document to constitute a motion
to intervene, a trust may not itself be party to a lawsuit. Although Mr. Watts filed this document
during the time that the court was holding contempt hearings, to the extent it may have been
intended as a response to the Motion for Summary Judgment, the court has considered it but
found nothing relative or probative to the issue here—whether Mr. Watts defaulted on his
obligation to pay under the contract.

keys to the jail.

## III.    Discussion

### A.    FDCPA

To the extent Mr. Watts's Amended Complaint states a claim under the FDCPA, that claim fails as a matter of law because Wells Fargo is not a "debt collector" under the statute. That a defendant is a debt collector comprises an element of an FDCPA claim. *Janke v. Wells Fargo & Co.*, 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011) (quoting *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360–61 (S.D. Fla. 2000)) ("In order to prevail on an FDCPA claim, a plaintiff must prove that: . . . (2) the defendant is a debt collector as defined by the FDCPA . . . ."). The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The statute explicitly excludes from that definition "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." *Id.* at § 1692a(6)(A). This exclusionary language has universally been interpreted as applying to a creditor itself and not merely officers or employees of a creditor. *E.g.*, *Shedd v. Wells Fargo Bank, N.A.*, No. 14-0275-WS-M, 2016 WL 3264127, at *9 & n.16 (S.D. Ala. June 13, 2016) (collecting cases). So the FDCPA by its clear language excludes or does not apply to a creditor like Wells Fargo.

Under the Retail Installment Contract, Wells Fargo owns the debt owed to it by Mr. Watts; its attempts to collect on that debt are those of a creditor who cannot be liable under the FDCPA. *Shedd*, 2016 WL 3264127, at *8–9 (finding that Wells Fargo was a creditor under §

1692a(6)(A) where it owned the subject promissory note and mortgage); *Johns v. Wells Fargo Bank, N.A.*, No. 14-0254-KD-C, 2015 WL 9238957, at *9 (S.D. Ala. Dec. 17, 2015) (finding that Wells Fargo was exempt from liability under the FDCPA as a creditor because it owned the debt on which it was attempting to collect); *Janke*, 805 F. Supp. 2d at 1282 (dismissing plaintiff's FDCPA claim because Wells Fargo constituted a creditor, and not a debt collector, under the FDCPA). Accordingly, Wells Fargo is entitled to judgment as a matter of law as to Mr. Watts's FDCPA claim.[3]

## B. Vapor Money Theory

Apart from his FDCPA claim, Mr. Watts's Amended Complaint boils down to an argument that he is the rightful owner of the BMW and that Wells Fargo owes *him* money, rather than the other way around. Specifically, he propounds the bizarre "vapor money" theory: he asserts that his execution of the contract constituted payment to Wells Fargo, and that Wells Fargo's ownership of Mr. Watts's obligation to pay under the contract "created" money, because Wells Fargo added the amount of his liability to its assets. Mr. Watts argues that not only is he not indebted to Wells Fargo, but Wells Fargo has *borrowed* money *from* and *owes* money *to* him, as it established an account in his name containing $70,438.80 in credit without giving him anything in exchange (apparently, in this equation, a $50,000 BMW is worthless).

Another district court described this theory in the context of a promissory note:

> Plaintiff alleges that the promissory note he executed is the equivalent

---

[3] At the preliminary injunction hearing, Mr. Watts admitted that the FDCPA does not apply to Wells Fargo. The undersigned explained to Mr. Watts that "the attorney is correct in telling you that the Fair Debt Collection Practices Act probably does not apply to Wells Fargo because Wells Fargo is not a collection agency." Mr. Watts replied, "That's correct." (Doc. 57 at 7:19–23).

> of "money" that he gave to the bank. He contends that Bank One took his "money," i.e., the promissory note, deposited it into its own account without his permission, listed it as an "asset" on its ledger entries, and then essentially lent his own money back to him. He contends that Bank One did not actually have the funds available to lend to him, but instead "created" the money through its bookkeeping procedures. He further argues that because Bank One was never at risk, and provided no consideration, the promissory note is void *ab initio*, and Defendants' attempts to foreclose on the mortgage are therefore unlawful.

*Demmler v. Bank One NA*, No. 2:05-CV-322, 2006 WL 640499, at \*3 (S.D. Ohio Mar. 9, 2006).

As numerous other courts have already observed, this theory is "utterly frivolous" and "patently ludicrous." *Demmler*, 2006 WL 640499, at \*3–4 (collecting cases); *see, e.g.*, *Wilkerson v. Gozdan*, No. 2:14-CV-693-WKW, 2014 WL 4093279, at \*4–5 (M.D. Ala. Aug. 19, 2014) (quoting *Sanford v. Robins Fed. Credit Union*, No. 5:12-CV-306 (MTT), 2012 WL 5875712, at \*3–4 (M.D. Ga. Nov. 20, 2012) (quoting case law denoting the vapor money theory as "'equal parts revisionist legal history and conspiracy theory'" and dismissing the plaintiff's complaint for failing to state an actionable claim)); *Kalpak v. EMC Mortg. Corp.*, No. 3:11-cv-49 (CAR), 2011 WL 2711183, at \*3 (M.D. Ga. July 13, 2011) (citations omitted) ("Courts both in the Eleventh Circuit and across the country have uniformly rejected claims based on this 'vapor money' theory, finding they are not actionable as a matter of law."). And Mr. Watts does not attempt to explain why he is entitled to possession of the car if the Retail Installment Contract is void for lack of consideration. If the contract is void from its beginning, the remedy is to place the parties where they were before the contract: CarMax gets the car back and, under Mr. Watts's theory, Wells Fargo reverses the listing of his obligation to pay as its asset. But Mr. Watts does not get to keep the car.

Although Mr. Watts denied that he is a sovereign citizen, his bizarre nonsensical theories are the kind used by such groups. As the court warned him at the first conference, such nonsense does not hold water.

Mr. Watts may believe that Wells Fargo got "money for nothing," but in fact Mr. Watts attempted to obtain a vehicle for free. *See* DIRE STRAITS, *Money for Nothing*, BROTHERS IN ARMS (Warner Bros. Records 1985). For almost two years Mr. Watts possessed and drove the BMW without paying a dime on the loan with Wells Fargo. His free ride has come to an end. Accordingly, Wells Fargo is entitled to judgment as a matter of law on Mr. Watts's claim that he is the rightful owner of the vehicle and is entitled to any recovery from Wells Fargo.

**C.      Breach of Contract & Attorneys' Fees**

Wells Fargo asserts that Mr. Watts breached the Retail Installment Contract. Under Alabama law, to succeed on its breach of contract claim, Wells Fargo must show: "(1) a valid contract binding the parties; (2) [Wells Fargo's] performance under the contract; (3) [Mr. Watts's] nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002).

The court already found, in granting Wells Fargo's request for a preliminary injunction, that Wells Fargo was likely to succeed on the merits of its breach of contract claim because Mr. Watts does not dispute that he signed the Retail Installment Contract. That contract gives Wells Fargo the right to repossess the vehicle if he is in default. The Retail Installment Contract is valid; Mr. Watts has produced no evidence suggesting otherwise. Wells Fargo loaned Mr. Watts $50,363.40 to purchase the vehicle and, under the contract, Mr. Watts was obligated to make monthly payments on this debt plus interest. Mr. Watts has been in default since July 2015,

8

having made his last payment in June 2015. Wells Fargo has been damaged by Mr. Watts's failure to pay in the form of Mr. Watts's nonpayment and its own payment of attorneys' fees and costs in litigating this action. The valid Retail Installment Contract gives Wells Fargo the right to possession of the vehicle now, and the right to reasonable attorneys' fees of not more than 15% of the amount Mr. Watts owed at the time of default and costs incurred in enforcing the contract.

Accordingly, Wells Fargo is entitled to possession of the vehicle, and to an award of reasonable attorneys' fees not to exceed 15% of the amount Mr. Watts owed at the time of default and costs incurred in litigating this suit.

## IV.    Conclusion

Because no genuine issue of material fact exists regarding whether Mr. Watts defaulted on his payment obligations under the contract he signed on May 8, 2014, Wells Fargo is entitled to summary judgment on Mr. Watts's claims against it and on its claims for breach of contract and attorneys' fees and costs.

Because no issues remain on the merits on the question of possession, the court will enter final judgment in favor of Wells Fargo as to its right to possession of the vehicle. The court grants leave to file a request for a specific amount of attorneys' fees, court costs, and any amount remaining due under the contract after repossession as a separate money judgment against Mr. Watts. The court will enter a separate order consistent with this opinion.

**DONE** this 25th day of May, 2017.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE